# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RONALD J. BONFILIO**,<br><br>    Plaintiff,<br><br>v.<br><br>**OCCUPATIONAL SAFETY & HEALTH ADMINISTRATION**,<br><br>    Defendant. | Case No. 17-cv-282 (CRC) |

## **MEMORANDUM OPINION**

Pro se plaintiff Ronald Bonfilio is looking for information about deaths and injuries on the sites of several construction companies in the Washington, D.C. metro area. He believes that at least one company may have staged a deadly accident to kill someone who witnessed its illegal operations. And in his view, the Occupational Safety & Health Administration ("OSHA") is not doing its job to expose the companies' wrongdoing. At best, Bonfilio says, the agency is systematically underreporting construction-site fatalities; at worst, it is covering up homicide. See Pl.'s Opp'n Mot. Summ. J. at 12; Pl.'s Mot. Compel, ECF No. 17, at 1.

In July 2016, Bonfilio submitted two requests to OSHA under the Freedom of Information Act ("FOIA"). His first request sought documents "concerning any deaths of . . . employees or any persons on the[] property" of four companies since 2001: Fort Myer Construction Company, Anchor Construction Company, Capitol Paving of DC, and Civil Construction LLC. Compl. Ex. 1, at 1. His second request sought information concerning "any injuries" of employees or visitors for the same companies in the same period. Id. at 2.

After an initial search, an attorney for the Department of Labor—OSHA's parent agency—identified eleven OSHA investigations that might contain information responsive to

Bonfilio's request. Decl. of Joseph P. Plick Supp. Def.'s Mot. Summ. J. ("Plick Decl.") ¶ 12.[1] The attorney sent the relevant investigation numbers to OSHA's Baltimore-Washington Area Office—where the files were located—and asked it to determine whether the agency instituted those investigations following a death or injury. Id. ¶ 13. The field office could locate ten of the eleven identified investigation files. Id. ¶ 14. Of those ten, three had been initiated in response to an injury, and none in response to a death. Id. ¶ 15

In an August 2016 letter, OSHA informed Bonfilio that it did not uncover any records responsive to his first request—the one regarding deaths on worksites. Compl. Ex. 2. As for the second request—regarding injuries—OSHA a month later provided Bonfilio with 273 pages of responsive documents. Id. Ex. 3; Plick Decl. ¶ 17. The agency redacted personal identifying information of the OSHA investigators and of the injured employees and their families on several pages of documents. Plick Decl. ¶¶ 34–36. In doing so, it invoked FOIA Exemptions 6 and 7(C), which (respectively) protect personnel files and records compiled for law enforcement purposes that, if disclosed, "could reasonably be expected to constitute an unwarranted invasion of personal privacy invade personal privacy." 5 U.S.C. § 552(b)(6), 7(C).[2]

Dissatisfied with the document production, Bonfilio followed up with the agency and pointed to news reports about the 2012 death of a man named Leroy Cook at a Fort Myer work

---

[1] This initial search also identified potentially relevant case files in Maryland and Virginia. But Maryland and Virginia are so-called "State Plan states," meaning that their own state occupational-safety agencies are responsible for investigation and recordkeeping. They do not rely on the federal OSHA and their records are not subject to FOIA. Plick Decl. ¶ 9; see 29 U.S.C. § 667. In responding to Bonfilio's request, OSHA officials thus explained that he would need to file separate open-records requests in those states to obtain any records in the possession of their respective agencies. Plick Decl. ¶ 19.

[2] The agency also withheld some material pursuant to Exemptions 4, 5 and 7(d), but Bonfilio does not challenge withholdings made under those exemptions.

site.  Plick Decl. ¶ 20.  The Department of Labor conducted another search but found no records related to Mr. Cook's death.  Id. ¶ 22.  The Department reached out to the OSHA investigator in charge of that case, who explained the absence.  Id. ¶ 23.  OSHA had found Fort Myer to be in compliance with all applicable health and safety regulations at the time of the incident and, when that is the case, OSHA's record-retention regulations provide for destruction of files after three years.  Id. ¶¶ 23–25; Decl. of Nadira Janack Supp. Def.'s Mot. Summ. J. ("Janack Decl.") ¶¶ 16–17.  Bonfilio's FOIA request had come more than three years after OSHA's finding of compliance.

Bonfilio then appealed within the Department of Labor, contending that OSHA had not adequately searched for records and that some of its withholdings and redactions were unjustified.  Compl. Ex. 4.  When the agency did not timely resolve the appeal, he brought this lawsuit *pro se* challenging its response to his FOIA requests.  OHSA has now filed for summary judgment.  In addition to opposing OSHA's motion, Bonfilio has moved to compel the production of documents and for leave to engage in discovery.  The Court will grant OSHA's motion and deny Bonfilio's various discovery-related motions.

*1. Adequacy of OSHA's Search.*  The crux of Bonfilio's argument here is that it is "inconceivable" that OSHA has no records of deaths at the four construction companies, and therefore that its search must have been inadequate.  The Court disagrees.

The adequacy of a search is not judged by its "fruits."  Iturralde v. Comptroller of Currency, 315 F.3d 311, 315 (D.C. Cir. 2003).  Rather, to establish the adequacy of a search under FOIA, an agency must simply "show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  Oglesby v. Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990).

3

Affidavits or declarations that "adequately describe the agency's search"—such as by stating the search terms used and type of search conducted—satisfy this burden. Id. An agency does not need to search all of its records, but it must "aver[] that all files likely to contain responsive materials (if such records exist) were searched." Id.

OHSA has done that here. It has submitted affidavits from a Department of Labor attorney who led the search efforts, Joseph Plick, and from the director of OSHA's field office for the Washington area, Nadira Janack. Mr. Plick and Ms. Janack recount the search procedures described above—which strike the Court as reasonable—and Janack explains that the agency is confident that there are no other locations where it could have searched and found additional responsive records. See Janack Decl. ¶ 18.

These assertions are "accorded a presumption of good faith," SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991), unless they are "called into question by contradictory evidence in the record or by evidence of agency bad faith," Consumer Fed'n of Am. v. Dep't of Agric., 455 F.3d 283, 287 (D.C. Cir. 2006). No such evidence exists here. Bonfilio's arguments to the contrary are not confined to the adequacy of OSHA's search *per se*, but instead attack its recordkeeping policies more generally. The outline of his theory is as follows: OSHA is required by statute to investigate workplace deaths and it must create a case file for any such investigation. Bonfilio knows (through news reports) of at least one death on a Fort Myers worksite in the time period covered by his FOIA request. Yet OSHA produced no records in response to his first request. OSHA thus *necessarily* conducted an inadequate search, unlawfully withheld responsive records in its possession, or destroyed them. And if it destroyed them, then its destruction was unlawful. See Pl.'s Opp'n Mot. Summ. J. at 4–8.

The Court finds Bonfilio's arguments unavailing. His sole contention regarding the

4

adequacy of OSHA's search *per se* is that the agency did not specify exactly what media it searched—and, in particular, it did not state that it looked for tapes, photos, videos, hard drives, thumb drives, emails, and notebooks of inspectors. But FOIA does not require this level of specificity; rather, the agency can describe generally that it searched electronically and in its physical files, as it did here. See Oglesby, 920 F.2d at 68.

To his second point, Bonfilio's belief that OSHA found responsive records but is withholding them in order to evade public scrutiny rests only on conjecture. It is not supported by any evidence that could overcome the sworn declarations submitted by the agency. See Wilbur v. CIA, 355 F.3d 675 (D.C. Cir. 2004) (per curiam) ("[T]he agency's failure to turn up a particular document, or mere speculation that as yet uncovered documents might exist, does not undermine the determination that the agency conducted an adequate search for the requested records.").

Finally, as to the contention that OSHA has unlawfully destroyed records: As a general matter, FOIA does not impose a duty on agencies to keep their records forever. Wilbur v. CIA, 355 F.3d 675, 678 (D.C. Cir. 2004) (per curiam). Rather, "[a] requester is entitled only to records that an agency has in fact chosen to create and retain." Yeager v. DEA, 678 F.2d 315, 321 (D.C. Cir. 1982). Of course, the destruction of documents in violation of statute or regulation would be a different story: a requester in that case might well have a remedy under FOIA. But here, the agency's record-retention protocols—which it has attached to its motion— appear to allow it to destroy records related to workplace-safety investigations once a case has been closed for over three years. See Def.'s Mot. Summ. J. Ex. C, at 13 (providing that "Safety Fatality" files held at field offices can be destroyed "during archival processing" if it has been more than three years after a case is closed"); Plick Decl. ¶ 24 ("Per OSHA's record retention

5

regulations . . . when a company that is being investigated is found to be in compliance, OSHA closes the investigation and the records related to the inspection are destroyed after three years."). And to the extent that Bonfilio believes that this policy is itself unlawful: none of the statutory provisions that he invokes prohibit OSHA from destroying its investigative records after a case is closed. See 29 U.S.C. § 651 (congressional statement of purpose); id. § 673 (requiring Department of Labor to compile statistics of workplace injuries); id. § 657 (authorizing Department of Labor to require employers to report workplace deaths and injuries).

In short, none of Bonfilio's arguments undermine OSHA's assertion that it looked for records relating to deaths at the four construction companies and was unable to find any, and that any gap in the agency's records is a result of its lawful protocol for handling case files.

***2. Bonfilio's Requests for Discovery.*** Beyond opposing summary judgment on the issue of adequacy, Bonfilio also seeks discovery—including productions of documents and depositions of OSHA investigators—based on his contention that OSHA has illegally destroyed records about Fort Myer. The Court will deny his request.

Discovery is strongly disfavored in FOIA cases. See Wheeler v. CIA, 271 F. Supp. 2d 132, 139 (D.D.C. 2003)). It is generally permitted only upon a showing that the agency acted in bad faith. Justice v. IRS, 798 F. Supp. 2d 43, 47 (D.D.C. 2011). And the Court has already rejected Bonfilio's allegation of bad faith: namely, that OSHA is covering up the existence of death-related records.

The cases on which Bonfilio relies—which allowed for some discovery—involved record evidence that the agency intentionally destroyed responsive records after someone submitted a FOIA request. See Chambers v. Dep't of Interior, 568 F.3d 998 (D.C. Cir. 2009); Judicial Watch, Inc. v. Dep't of Commerce, 34 F. Supp. 2d 28 (D.D.C. 1998). There is no such evidence

6

here. Rather, OSHA's affiants explain that the records were destroyed well before Bonfilio's requests pursuant to the agency's standard record-retention procedures. And "an agency has no duty to retrieve and release documents it once possessed but that it *legitimately* disposed of *prior* to the date a FOIA request was received." Chambers, 568 F.3d at 1004 (quoting McGehee v. CIA, 697 F.2d 1095, 1103 n. 33 (D.C. Cir. 1983)); see also SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1201 (D.C. Cir. 1991) ("If the agency is no longer in possession of the document, for a reason that is not itself suspect, then the agency is not improperly withholding that document . . . ."). Discovery is not warranted here.

    ***3. OSHA's Withholdings.*** In his agency appeal, Bonfilio challenged OSHA's reliance on Exemptions 6 and 7(C) to redact the personal information of OSHA employees and other individuals from several responsive documents. See Compl. Ex. 4, at 2–3. Apparently anticipating that the issue would remain live, OSHA's motion for summary judgment argues that its withholdings were proper. In his opposition and various discovery-related motions, however, Bonfilio does not respond to OSHA's arguments regarding withholding; he instead focuses solely on OSHA's search and document-retention procedures. While the Court is mindful that *pro se* plaintiffs like Bonfilio must be given the benefit of the doubt when it comes to doctrines of waiver and forfeiture, here he has given the Court nothing to work with. The Court must treat any argument regarding OSHA's withholdings as forfeited.

                                     \*      \*      \*

    For those reasons, the Court will grant OSHA's motion for summary judgment. It will deny Bonfilio's motions to compel production of documents, for leave to subpoena and depose

7

OSHA inspectors, to add necessary parties,[3] for limited discovery, to issue subpoenas, and to compel OSHA to provide addresses of its officials. A separate order accompanies this memorandum opinion.

                                                                                                 _____

                                                                                                 CHRISTOPHER R. COOPER
                                                                                                 United States District Judge

Date: August 21, 2018

---

[3] Bonfilio's motion for leave to add parties seeks to add individual OSHA inspectors as defendants. The proper defendant in a FOIA case, however, is the agency and the agency alone. See Abuhouran v. Nicklin, 764 F. Supp. 2d 130, 131 (D.D.C. 2011) ([A] federal agency is the proper defendant in a FOIA action . . .").